**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**WHEELING DIVISION**

**NAUTILUS INSURANCE COMPANY,**

**Plaintiff,**

**v.**

Civil Action No.: 5:17-CV-60 (Stamp)

**GC&P DEVELOPMENT, LLC, GC&P AGGREGATES, LLC,**
**GACS, L.P., KEVIN P. COYNE, SR., individually,**
**WOODSDALE UNITED, and**
**DALE TRAVIS and SHARON TRAVIS, husband and wife,**

**Defendants.**

ELECTRONICALLY
FILED
May 09 2017
U.S. DISTRICT COURT
Northern District of WV

## COMPLAINT FOR DECLARATORY RELIEF

Nautilus Insurance Company ("Nautilus") by and through counsel, Lee Murray Hall and Jenkins Fenstermaker, PLLC, pursuant to Rule 57 of the Federal Rules of Civil Procedure and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, respectfully requests that this Court declare the rights and responsibilities of the parties relative to a contract of insurance issued to GACS, L.P. ("GACS"). In support of its Petition, Nautilus states as follows:

### PARTIES

1.      Nautilus is an Arizona corporation engaged in the business of insurance, and is a surplus lines carrier with policies of insurance issued in the State of West Virginia. Its principal place of business is located at 7233 E Butherus Dr., Scottsdale, Arizona 85260.

2.      Defendant GC&P Development, LLC is a limited liability corporation believed to be organized under the laws of the state of West Virginia, with its principal place of business located at 99 Aaronwoods Ct., Wheeling, West Virginia 26003.

3.      Defendant GC&P Aggregates, LLC is a limited liability corporation believed to be organized under the laws of the state of West Virginia, with its principal place of business located at 99 Aaronwoods Ct., Wheeling, West Virginia 26003

4.      Defendant GACS, L.P. is a limited partnership with its principal place of business at 99 Aaron Way, Wheeling, West Virginia 26003.

5.      Defendant Kevin P. Coyne, Sr. ("Mr. Coyne") is a resident of Wheeling, West Virginia 26003.

6.      Defendant Woodsdale United ("Woodsdale") is an unincorporated association comprised of unnamed residents of the Greggsville and Woodsdale neighborhoods in Wheeling, West Virginia who own property and/or live near hilltop property owned by Mr. Coyne and/or GC&P Development, LLC ("Subject Property").

7.      Defendants Dale and Sharon Travis ("Mr. and Mrs. Travis") are residents of Ohio County, West Virginia and own residential property in Ohio County adjacent to the Subject Property.

**JURISDICTION AND VENUE**

8.      This Court has jurisdiction to enter a declaratory judgment pursuant to 28 U.S.C. § 1332, in that the parties in the Complaint are of diverse citizenship, and the amount in controversy exceeds $75,000.00 exclusive of interest and attorneys' fees.

9.      This Court has jurisdiction to enter a declaratory judgment pursuant to 28 U.S.C. § 2201 and 2202, and Federal Rule of Civil Procedure 57.

10.     Venue exists in this District pursuant to 28 U.S.C. § 1391(a) in that a substantial part of the events or omissions giving rise to this claim occurred within this District.

## FACTS

11.     Underlying Defendants Mr. Coyne and/or GC&P Development, LLC own the Subject Property.

12.     On or about October 31, 2015, Mr. Coyne, on behalf of GACS, L.P., signed a completed a Commercial Insurance Application seeking a Commercial General Liability policy to cover vacant land located near Wheeling, West Virginia. *See Application Materials, Attached as Exhibit 1.*

13.     The signed application included a completed a "vacant land application form" which represented that there were no "activities" taking place on the property to be insured, "[i]ncluding but not limited to . . . logging [and] forestry work" and that there was no "real estate development on the land to be insured taking place or planned for the future[.]" *See Exhibit 1.*

14.     GACS further represented that there would be no real estate development on the land taking place or planned for the future. *See Exhibit 1.*

15.     The application listed the  following properties to be covered by the new policy:

    a.  66.68 acres of vacant land, Greggsville;

    b.  20.16 acres of vacant land, Woodsdale;

    c.  4.01 acres of vacant land, Greggsville;

    d.  15 Woodlawn Court Rear;

    e.  196 Bethany Pike Rear; and

    f.  4.40 acres of vacant land in an unspecified location.

16.     On October 16, 2015, by Deed recorded in Book 896, Page 737 in the Ohio County Deed Records ("Deed"), GC&P Development, LLC conveyed to GACS "all limestone, dolomite, sandstone, chert, gravel, sand, shale, slate, clay, rock and other commercial saleable materials or

aggregates of such materials (collectively 'Stone'), and the overburden and fill material not including Stone ('Overburden')" on four (4) tracts of land described by metes and bounds in the Deed.

17.    Based upon the information provided by GACS, Nautilus issued Policy No. NN606138 on or about October 30, 2015, with a policy period from October 30, 2015 to October 30, 2016 and limits of $2,000,000 per occurrence and $4,000,000 aggregate. GACS paid a total premium of $2,039 for the Policy. *See* Exhibit 2, Policy.

**UNDERLYING SUIT AND REQUEST FOR ADDITIONAL COVERAGE**

18.    Underlying Plaintiffs filed suit on January 12, 2016 against GC&P Development, LLC, GC&P Aggregates, and Mr. Coyne ("Underlying Defendants"), and moved the Court for a Temporary Restraining Order ("TRO") based on alleged damage to their property caused by operations on the Subject Property.

19.    On January 13, 2016, the Court entered a TRO based upon a finding that "[Underlying] Defendants are engaging in commercial timbering and/or development of a rock quarry on their property, zoned for residential use only, without having first sought site review by the City of said development."

20.    Underlying Defendants responded to the TRO on January 15, 2016, and described a series of communications with the City of Wheeling beginning in approximately December 2015 regarding work performed on the property. On or about January 5, 2016, Rosemary Humway-Warmuth, City Solicitor for the City of Wheeling, wrote to Underlying Defendants' counsel and referenced a "permit for Timbering [that] was to expire on December 31, 2015."

21.    Ms. Humway-Warmuth's letter directed Underlying Defendants to cease removal of timber and excavation of fill dirt pending the outcome of an appeal to the City's Board of Zoning

Appeal. Underlying Defendants also attached a January 6, 2016 email exchange between Thomas Connelly, Assistant Director of the City of Wheeling's Economic & Community Development Department, that pertained to "continued excavation activity occurring on the property" and that authorized "the removal of already fallen trees on the property and the removal of the mound of soil that appears . . . has already been excavated."

22.     In February 2016, Brett Andrews ("Mr. Andrews"), Vice President of Insurance Services with G&W Insurance Group, received an email dated February 18, 2016 that indicated that GC&P Development intended to widen an existing driveway at 196 Bethany Pike, clear land and remove felled timber, perform limited grading work for access and storm water management, and demolish improvements located at "196 Bethany" to allow driveway widening.

23.     Mr. Andrews provided this email to Risk Placement Services, Inc., a surplus lines broker, and asked that the current coverage be amended to "contemplate the ongoing operations." Mr. Andrews also requested that GC&P Development and GC&P Aggregates be added as named insureds.

24.     Mary Mundy, Senior Underwriter for Nautilus, reviewed the request and responded with a direct notice of cancellation based upon representations made in the application that there were no activities taking place on the Subject Property.

## OPERATIVE UNDERLYING COMPLAINT

25.     Woodsdale United and Mr. Travis filed an Amended Verified Complaint on or about January 21, 2016, which added Sharon Travis as a plaintiff. Woodsdale United, Mr. Travis, and Mrs. Travis (collectively, "Underlying Plaintiffs") Second Amended Verified Complaint filed later the same day added GACS, L.P. as a defendant. *See* Exhibit 3, Second Amended Complaint.

26.     Underlying Plaintiffs allege that Mr. Coyne and/or GC&P Development, LLC own the Subject Property and are responsible for development on the Subject Property.  Underlying Plaintiffs further allege that GC&P Aggregates, LLC ("GC&P Aggregates") was formed "for the sole purpose of extracting rock 'aggregates'" from the Subject Property.

27.     The Second Amended Complaint claims that "[s]tarting at a date presently unknown, but continuing throughout the year of 2015, Underlying Defendants have been engaged in commercial timbering on the Coyne Property; the burning of cuttings and debris from their commercial timbering operation; building and maintenance of access roads, excavation of soil with earth moving equipment; alteration of the terrain; and stripping the top of the hill of much of its covering."  See Exhibit 3, P. 8.

28.     Underlying Plaintiffs further allege that Underlying Defendants created GC&P Aggregates on or about August 27, 2015 to operate a rock quarry on the Subject Property and excavate limestone and other natural resources for commercial sale.  Although Underlying Plaintiffs claim that Mr. Coyne has expressed his intentions to private residents, they allege that Underlying Defendants have "refused to tell city officials of their intentions, ha[ve] concealed material information about what defendants are doing and intend to accomplish on the hillside from city and state officials" to circumvent zoning laws, regulations, and processes established by the City of Wheeling. *See Exhibit 3, P. 12-13.*

29.     The Second Amended Complaint also alleges that Underlying Defendants "intentionally ignored the municipal laws of the City of Wheeling . . . have engaged in deceptive and fraudulent concealment from city and state officials, and continued to do soil excavation work with a heavy, shovel excavator" despite a stop work order issued on December 21, 2015. *See Exhibit 3, P. 16.*

30.     Count I of the Second Amended Complaint asserts negligence, claiming that Underlying Defendants ignored best practices and negligently cut timber and excavated soil, thereby causing excess water runoff and property damage to Mr. and Mrs. Travis's home. Mrs. Travis also claims that smoke from the burning of debris infiltrated her property, causing physical illness. *See Exhibit 3, Ps. 18-20.*

31.     Count II of the Second Amended Complaint avers that the allegedly unlawful commercial timbering and development constitutes a public nuisance by causing property damage to residents in the area of the Subject Property, and by causing water and mud to run off onto Bethany Pike, also known as Route 88.  Underlying Plaintiffs further claim that movement of heavy equipment has created traffic congestion on Bethany Pike. *See Exhibit 3, P. 21.*

32.     Count III of the Second Amended Complaint alleges a claim of conspiracy, stating that Underlying Defendants "have jointly engaged in a common fraudulent scheme and conspiracy against Underlying Plaintiffs and the Wheeling community in general" to conceal the true nature of their development plans until city officials can no longer stop them from developing the Subject Property for commercial use. *See Exhibit 3, P. 22.*

33.     Count IV of the Second Amended Complaint avers a claim for injunctive relief. *See Exhibit 3, P. 23-24.*

34.     Underlying Plaintiffs also seek compensatory damages for property damage, inconvenience, and emotional distress, as well as punitive damages for Underlying Defendants' allegedly "intentional, conscious and reckless disregard" for their rights.  Mr. and Mrs. Travis also seek to recover attorneys' fees and litigation costs. *See Exhibit 3, p. 8.*

## COUNT I
## MISREPRESENTATION IN THE APPLICATION

35.     Paragraphs 1 through 33 are incorporated herein as if set forth fully.

36. No coverage exists under the Nautilus Policy because the insured was conducting operations on the property or planned to develop the property such that the questions answered on the application were false, amounting to a material misrepresentation.

37. Pursuant to West Virginia Code § 33-6-7, a misrepresentation in an application for an insurance policy will prevent recovery under the policy where the incorrect statements are:

a. Fraudulent; or

b. Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or

c. The insurer in good faith would either have not issued the policy, or would not have issued a policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or otherwise.

38. The application describes the property as "vacant land."

39. The application on or about September 8, 2015, by Mr. Coyne, on behalf of GACS, requested that the Policy cover "vacant land" located near Wheeling, West Virginia and describes the property to be insured as "vacant land."

40. The Commercial General Liability Section of the application listed the following properties to be covered by the new policy:

   i. 66.68 acres of *vacant land*, Greggsville;

   ii. 20.16 acres of *vacant land*, Woodsdale;

   iii. 4.01 acres of *vacant land*, Greggsville;

   iv. 15 Woodlawn Court Rear;

   v. 196 Bethany Pike Rear; and

   vi. 4.40 acres of *vacant land* in an unspecified location.

41. Mr. Coyne completed a "Vacant Land" Application Form and represented that there were no "activities" taking place on the property to be insured, "[i]ncluding but not limited to . . . logging [and] forestry work" and that there was no "real estate development on the land to be insured taking place or planned for the future[.]"

42. Based upon the information provided by GACS, Nautilus issued the Policy.

43. Counsel for the insured has produced a Site Access and Contract Timber Clearing Agreement between Funka Forest Products and GC&P Development dated May 29, 2105, which assumedly means 2015.

44. The Agreement provided for timber clearing services on property located at "194 Rear Bethany Pike."

45. Pursuant to the Site Access and Contract Timber Clearing Agreement, Funka Forest Products was to commence timber clearing before June 8, 2015.

46. Counsel also provided a Site Access and Removal of Fill Material Agreement between APS and GC&P Development dated December 15, 2015. This Agreement indicated that APS would perform fill material excavation, site grading, and site restoration pursuant to WVDEP Permit No. WVR106373.

47. As such, the operations ongoing at the time of the policy application, which was signed on September 8, 2015, prevented the property from being considered "vacant land" as the terms are commonly understood.

48. As a result, the Nautilus Policy excludes coverage. Under W. Va. Code §33-6-7, a misrepresentation in an application for an insurance policy will prevent recovery under the policy where the "insurer in good faith would [not have] issued the policy . . . if the true facts had been made known to the insurer as required either by the application for the policy or otherwise."

49.     If the questions posed to the insured had been answered truthfully, Nautilus would not have issued the policy on the same terms, if at all.

50.     The insured's objectively material misrepresentations in the policy application defeats coverage under the Policy.

51.     Therefore, no coverage exists due to a material misrepresentation to Nautilus.

## COUNT II
### THE ALLEGATIONS IN THE UNDERLYING PLAINTIFFS' COMPLAINT FALL OUTSIDE THE COVERAGE GRANT

52.     Paragraphs 1 through 51 are incorporated herein as if set forth fully.

53.     The relevant Policy language states:

### *SECTION I - COVERAGES*

### *COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY*

**1. Insuring Agreement**
*[. . .]*
> **b.**     *This insurance applies to "bodily injury" and "property damage" only if:*
>
> > **(1)**     *The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";*

*See* Exhibit 2 at GC 00 01 12 04 (Page 1 of 15).

*[. . .]*
**SECTION V - DEFINITIONS**
*[. . .]*
**3.**     *"Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.*

*[. . .]*
**13.**     *"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.*

*[. . .]*
**17.**     *"Property damage" means:*
> **a.**     *Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or*

10

> **b.** *Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.*
>
> *[. . .]*
> **22.** *"Your work":*
> **a.** *Means:*
> > *(1) Work or operations performed by you or on your behalf; and*
> > *(2) Materials, parts or equipment furnished in connection with such work or operations.*

*See* Exhibit 2 at GC 00 01 12 04 (Page 12, 14-15 of 15).

54.    The gravamen of the allegations against GC& P Development, LLC in the Second Amended Complaint is that the Underlying Defendants concealed their development plans from city and state officials, and circumvented zoning laws that prohibit timbering on property zoned only for residential development.

55.    Thus, the conduct alleged in the Second Amended Complaint is not accidental or fortuitous and therefore, falls outside the definition of an "occurrence" under the Policy.

56.    Count II of the Second Amended Complaint alleges that the allegedly unlawful commercial timbering and development constitutes a public nuisance by causing property damage to residents in the area of the Subject Property and by causing water and mud to run off onto Bethany Pike, also known as Route 88, and further claims that movement of heavy equipment has created traffic congestion on Bethany Pike.

57.    The allegations of nuisance and traffic congestion on the roadway do not fall within the definition of "property damage" or "bodily injury."

58.    Therefore, the allegations in Count II fall outside the coverage grant.

59.    Count I of the Second Amended Complaint alleges negligence in connection with the excavation and timbering work performed on the property.

60. Defective work does not constitute an "occurrence" under a CGL policy because the conduct was "deliberate, intentional, expected, desired, or foreseen" by the insured.

61. Count III of the Second Amended Complaint alleges a fraudulent scheme and conspiracy to hide and conceal Defendants' true development plans from city officials. It alleges that Defendants were aware of the restrictions but nevertheless proceeded with the work despite this knowledge.

62. Thus, Count III of the Underlying Plaintiffs' Second Amended Complaint alleges a complicit, fraudulent, knowing violation of the restrictions which is not an "occurrence" under the Policy.

**COUNT III**
**THE POLICY DOES NOT PROVIDE COVERAGE FOR INJUNCTIVE RELIEF**

63. Paragraphs 1 through 63 are incorporated herein as if set forth fully.

64. The relevant Policy language provides:

*SECTION I - COVERAGES*

*COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY*

*1. Insuring Agreement*

*a.* *We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" and "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.*

*See* Exhibit 2 at GC 00 01 12 04 (Page 1 of 15).

65. Count IV of Underlying Plaintiffs' Second Amended Complaint seeks injunctive relief rather than monetary damages.

12

66.     There is no coverage for these claims under the Policy, as such a claim falls outside of the coverage grant. *See generally One Gateway Assocs. v. Westfield Ins. Co.*, 184 F. Supp. 2d 527 (S.D.W. Va. 2002) (explaining that an insurer has no duty to afford coverage, defense, or indemnity in a claim for injunctive relief).

**COUNT IV**
**THE ALLEGATIONS IN THE UNDERLYING COMPLAINT FALL WITHIN THE CONSTRUCTION OPERATIONS EXCLUSION**

67.     Paragraphs 1 through 66 are incorporated herein as if set forth fully.

68.     The Policy contains an Exclusion for All Construction Operations, which provides as follows:

*THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY*

**EXCLUSION – ALL CONSTRUCTION OPERATIONS**

*This endorsement modifies insurance provided under the following:*

*COMMERCIAL GENERAL LIABILITY COVERAGE PART*

**A.**     *The following exclusion is added to 2.  Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability, Coverage B – Personal and Advertising Injury Liability and Coverage C – Medical Payments:*

*This insurance does not apply to:*

**1.**     *"Bodily injury", "property damage", "personal and advertising injury" or medical payments arising out of any "construction operations" performed by you or on your behalf.*
**2.**     *Costs and expenses to investigate or defend any claim, "suit" or payment of any fine or penalty for paragraph A.1. above.*

**B.**     *This exclusion applies to:*

**1.**     *"Bodily injury", "property damage", "personal and advertising injury" and medical payments for which any insured may be obligated to pay damages by reason of the assumption of liability in any contract or agreement, regardless of whether such contract or agreement is an "insured contract"; or*
**2.**     *Any obligation to share damages with or repay someone else who must pay damages.*

*C.*    *The following definitions are **added** to the **Definitions** section:*

*1.*    *"Construction" means the act of building by putting together materials and parts to create a structure including, but not limited to, building the foundations, framework, floors, walls, ceilings, trusses or roof, or debris removal.*

*2.*    *"Construction operations" means, with respect to real property, surveying, site preparation, grading of land, excavation, debris removal, soil compaction, tree clearing, demolition, reconstruction, renovation, alteration, remodeling, repair, service, improvement and any other "pre-construction" and any other "construction" and any other "post-construction."*

*3.*    *"Post-construction" means those activities that occur after the issuance of the notice of completion or certificate of occupancy, whichever comes first.*

*4.*    *"Pre-construction" means those activities that must occur prior to the actual start of the "construction" process including, but not limited to, grading of land, inspection, land surveying, site preparation, soil compaction, tree clearing or installation of driveways, parking areas, roads, sidewalks, and utilities.*

*See* Exhibit 2 at *Endorsement L293 (07/10).*

69.    Count I of Underlying Plaintiffs' Second Amended Complaint alleges that Underlying Defendants failed to exercise reasonable care and skill in the timbering and excavation operations performed on the property.

70.    The Subject Property was being prepared for development through site preparation and excavation which falls squarely within the definition of "Construction Operations."

71.    This Construction Operations Exclusion defeats coverage for all construction-related claims.

### COUNT V
### THE ALLEGATIONS IN THE UNDERLYING PLAINTIFFS' COMPLAINT
### FALL WITHIN THE POLLUTION EXCLUSION

72.    Paragraphs 1 through 71 are incorporated herein as if set forth fully.

73.    Count I of the Second Amended Complaint alleges that Mrs. Travis suffered physical illness as a result of Underlying Defendants burning debris on the Subject Property.

74.    The Policy contains the following Total Pollution Exclusion Endorsement:

*THIS EXCLUSION CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.*

### *EXCLUSION – TOTAL POLLUTION*

*This endorsement modifies insurance provided under the following:*

*COMMERCIAL GENERAL LIABILITY COVERAGE PART*

**A.**      *Exclusion **f.  Pollution** of **2.  Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is **replaced** by the following:*

*This insurance does not apply to:*

**f.      Pollution**

**(1)**      *"Bodily injury" or "property damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.*

[. . .]

**B.**      *The definition of "Pollutants" in the **Definitions** section is **replaced** by the following:*

*"Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes, but is not limited to, materials to be recycled, reconditioned, or reclaimed.*

*See* Exhibit 2 at *Endorsement L223 (06/07).*

75.      Pollutants" include "smoke . . . soot, [and] fumes," while such an illness would amount to "bodily injury" caused by the "release or escape of 'pollutants'".

76.      Pursuant to this language, Mrs. Travis's alleged illness resulting from smoke migrating to her property from burning debris on the Subject Property is not covered under the Policy. "

77.      Therefore, coverage for Mrs. Travis' alleged bodily injury claims is excluded by the Total Pollution Exclusion.

### COUNT VI
### INTENTIONAL INJURY EXCLUSION

15

78.     Paragraphs 1 through 77 are incorporated herein as if set forth fully.

79.     The Commercial General Liability Coverage Form, Section I states:

### SECTION I - COVERAGES

### COVERAGE A
### BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**2. Exclusions**

*This insurance does not apply to:*

**a.   Expected Or Intended Injury**

*"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons and property.*

*See* Exhibit 2 at GC 00 01 12 04 (Page 2 of 15).

80.     Count I of the Second Amended Complaint alleges intentional timbering and/or excavation, which caused damage to Underlying Plaintiffs' property.

81.     Count III of the Second Amended Complaint alleges that Underlying Defendants engaged in a fraudulent scheme to hide and conceal their true development plans from city officials.

82.     Thus, Underlying Defendants' conduct and Underlying Plaintiffs' alleged damages were expected or intended from the standpoint of the insureds.

83.     Therefore, this exclusion defeats coverage under the Policy.

### COUNT VII
### PUNITIVE OR EXEMPLARY DAMAGES EXCLUSION

84.     Paragraphs 1 through 83 are incorporated herein as if set forth fully.

85.     The Policy contains the following Punitive or Exemplary Damages Exclusion:

*THIS EXCLUSION CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.*

### *EXCLUSION – PUNITIVE OR EXEMPLARY DAMAGES*

*This endorsement modifies insurance provided under the following:*

> *COMMERCIAL GENERAL LIABILITY COVERAGE PART*
> *LIQUOR LIABILITY COVERAGE PART*
> *OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART*
> *PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART*

*The following exclusion is added to 2. Exclusions of Section I:*

> *This insurance does not apply to punitive or exemplary damages.*

*See* Exhibit 2 at *Endorsement L217 (06/07).*

86.     Underlying Plaintiffs Second Amended Complaint seeks an award of punitive damages as a result of the Underlying Defendants' actions.

87.     An insurance company may decline to insure against punitive damages by an express exclusion in its policy to that effect. *See Hensley v. Erie Ins Co.*, 283 S.E.2d 227, 230 (W. Va. 1981); *see also State ex rel. State Auto Ins. Co. v. Risovich*, 511 S.E.2d 498 (W. Va. 1998).

88.     Here, the punitive damages exclusion excludes coverage for the damages sought in the Underlying Plaintiffs' Second Amended Complaint.

### COUNT VIII
### CONTRACTORS AND SUBCONTRACTORS EXCLUSION

89.     Paragraphs 1 through 88 are incorporated herein as if set forth fully.

90.     The Policy contains the following Contractors and Subcontractors Exclusion:

*THIS EXCLUSION CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.*

### *EXCLUSION – CONTRACTORS AND SUBCONTRACTORS*

*This endorsement modifies insurance provided under the following:*

> *COMMERCIAL GENERAL LIABILITY COVERAGE PART*

*The following exclusion is **added** to **2. Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability, Coverage B – Personal And Advertising Injury Liability** and **Coverage C – Medical Payments**:*

> *This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" or medical payments arising out of work performed by any contractor or subcontractor whether hired by or on behalf of any insured, or any acts or omissions in connection with the general supervision of such work.*

*See* Exhibit 2 at *Endorsement L282 (07/10).*

91.     Count I of Underlying Plaintiffs' Second Amended Complaint alleges that Underlying Defendants failed to exercise reasonable care and skill in the timbering and excavation operations performed on the property while it was being prepared for development through site preparation and excavation.

92.     Any acts or omissions by any contractor or subcontractor hired by or on behalf of the insured to perform timbering and excavation operations falls squarely within the Contractors and Subcontractors Exclusion.

93.     Thus, the Exclusion excludes coverage for any damages sought related to work performed by contractors or subcontractors in the Underlying Plaintiffs' Second Amended Complaint.

**COUNT VIIII**
**NO DUTY TO DEFEND**

94.     Paragraphs 1 through 93 are incorporated herein as if set forth fully.

95.     The relevant Policy language provides:

***SECTION I - COVERAGES***

***COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY***

***1. Insuring Agreement***

18

    *a.*    *We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" and "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.*

*See* Exhibit 2 at GC 00 01 12 04 (Page 1 of 15).

### *SECTION V - DEFINITIONS*

*[. . .]*

**3.**    *"Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.*

*[. . .]*

**13.**    *"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.*

*[. . .]*

**17.**    *"Property damage" means:*

    *a.*    *Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or*

    *b.*    *Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.*

**18.**    *"Suit" means a civil proceeding in which damages because of "bodily injury, "property damage" or "personal and advertising injury" to which this insurance applies are alleged.  "Suit" includes:*

    *a.*    *An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or*

    *b.*    *Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.*

*See* Exhibit 2 at GC 00 01 12 04 (Page 12, 14-15 of 15).

96. For the reasons set forth above in Counts I-VIII, there is no coverage for the allegations in the

Second Amended Complaint.

97. Thus, Nautilus has no duty to defend the Underlying Defendants against the allegations in the Second Amended Complaint.

98. The City of Wheeling has asserted an Administrative Action through the Board of Zoning Appeals.

99. The Administrative Action seeks a temporary restraining order and a preliminary injunction.

100.   The Administrative Complaint is not a "suit," as defined by the Policy.

101.   Moreover, the Administrative Complaint does not allege an "occurrence" or seek damages for "bodily injury" or "property damage" as defined by the Policy.

102.   Therefore, there is no duty to defend the Administrative Action because it is not a "suit" seeking damages for "property damage" or "bodily injury" for an occurrence, as defined by the Policy.

WHEREFORE, Nautilus Insurance Company respectfully requests that this Court enter an order declaring:

1.   That based on the language in the Policy, the claims asserted by the Underlying Plaintiffs in the Second Amended Complaint are not covered by the Policy and therefore, Nautilus has no duty to defend or indemnify Underlying Defendants for the allegations therein;

2.   That based upon the language in the Policy that the claims asserted in any administrative action are not covered by the Policy and therefore, Nautilus has no duty to defend or indemnity Underlying Defendants for the allegations contained therein; and

3.   For such further relief as this Court deems proper.

**NAUTILUS INSURANCE COMPANY,**

**By counsel,**

/s/ Lee Murray Hall
Lee Murray Hall, Esquire (WVSB #6447)
Sarah A. Walling, Esquire (WVSB #11407)
JENKINS FENSTERMAKER, PLLC
Post Office Box 2688
Huntington, West Virginia 25726-2688
Phone: (304) 523-2100
Fax: (304) 523-2347