```
IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**NAUTILUS INSURANCE COMPANY,**

        Plaintiff,

v.  //  CIVIL ACTION NO. 5:17CV60
                     (Judge Keeley)

**GC&P DEVELOPMENT, LLC, GC&P
AGGREGATES, LLC, GACS, L.P.,
KEVIN P. COYNE, SR.,
individually, WOODSDALE UNITED,
and DALE TRAVIS and SHARON
TRAVIS, husband and wife,**

        Defendants.

## AMENDED[1] MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 23]

The plaintiff, Nautilus Insurance Company ("Nautilus"), seeks a declaratory judgment that it has no obligation to defend or indemnify the defendants GC&P Development, LLC, GC&P Aggregates, LLC, GACS, L.P., and Kevin P. Coyne, Sr. (collectively, "the GACS Defendants") in an underlying action alleging that they have engaged in unlawful timbering activities, and have fraudulently concealed development plans from the City of Wheeling (Dkt. No. 1).

Now pending is the motion for summary judgment filed by Nautilus (Dkt. No. 23). Having examined the relevant policy language in conjunction with the allegations in the underlying complaint, and finding no coverage, the Court **GRANTS** the motion

---

[1] This Memorandum Opinion and Order has been amended only to make findings pursuant to Federal Rule of Civil Procedure 54(b).

(Dkt. No. 23) and **DECLARES** that Nautilus has no duty to defend or indemnify the GACS Defendants on the underlying claims.

## I. BACKGROUND

### A. Factual Background

This case arises from an action filed by Woodsdale United, Dale Travis, and Sharon Travis (collectively, "the Underlying Plaintiffs") in the Circuit Court of Ohio County, West Virginia (Civil Action No. 16-C-9). According to the operative complaint in the case ("Underlying Complaint"),[2] throughout the year 2015, the GACS Defendants engaged in "commercial timbering . . . ; the burning of cutting and debris . . . ; building and maintenance of access roads; excavation of soil with earth moving equipment; alteration of the terrain; and stripping the top of the hill of much of its covering" on certain hilltop property located in Wheeling, West Virginia ("Subject Property") (Dkt. No. 1-3 at 4). The Travises reside in Wheeling and jointly own residential property adjoining the Subject Property.[3] Id. at 3.

---

[2] The Underlying Plaintiffs have twice amended their complaint, once to add Sharon Travis as a plaintiff and once to assert an additional claim against the GACS Defendants. As a result, the Plaintiff's Second Amended Verified Complaint is the operative complaint in the underlying action (Dkt. No. 1-3).

[3] Plaintiff Woodsdale United is an unincorporated association of Wheeling residents living in the historic neighborhoods of

2

**NAUTILUS INS. CO. v. GC&P DEV., LLC, ET AL.**                    **5:17CV60**

**AMENDED MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 23]**

---

The Underlying Complaint alleges that the defendant, Kevin P. Coyne, Sr. ("Mr. Coyne"), advised the Travises that he was "removing the top of the hill to quarry the 'natural resources' on his property,"[4] and that he "intended to put a 'mall' on the hilltop." Id. Ms. Travis further alleges that when she "expressed concern about the instability of the hillside," Coyne stated, "duh, that's why I have insurance." Id. (internal quotation marks omitted).

The Underlying Plaintiffs allege that Coyne also told residents in the community that he intended to excavate limestone existing under the surface of the Subject Property and to "sell it to a gas company as a necessary 'aggregate' to the fracking industry." Id. The Underlying Complaint further alleges that, while Coyne privately expressed his intentions to numerous residents, the GACS Defendants have "refused to tell [Wheeling] city officials of their intentions," and have "concealed material information about

---

Greggsville and Woodsdale. According to the Underlying Complaint, some members of the association own, or reside on, property in close proximity to the Subject Property (Dkt. No. 1-3 at 2).

[4] In response to the instant motion, the GACS Defendants state that GC&P Development, a limited liability company of which Coyne is a member, owns the Subject Property (Dkt. Nos. 27 at 4; 27-1 at 1). For the reasons discussed in Part IV.A, infra, the Court need not consider whether Coyne personally owns the property at issue in the Underlying Complaint.

what [they] are doing and intend to accomplish on the hillside" in order to circumvent certain zoning laws, regulations, and processes established by the City. Id. at 4. It also alleges that, by cutting timber and excavating soil on the Subject Property, the GACS Defendants have "intentionally ignored the municipal laws of the City of Wheeling," and have "engaged in deceptive and fraudulent concealment from city and state officials." Id. at 6.

In early 2016, the Underlying Plaintiffs filed suit against the GACS Defendants, alleging, among other things, property and bodily damage caused by the timbering and excavation operations on the Subject Property.[5] Specifically, Count One of the Underlying Complaint alleges that the GACS Defendants have "negligently cut timber and excavated soil on [the Subject Property], making the hillside upon which it is situate[d] even more unstable," and thereby causing excess water runoff and property damage to the Travises' home. Ms. Travis also alleges that smoke from the burning of debris has caused her to become physically ill. Id. at 6.

In related claims, the Underlying Plaintiffs allege in Count Two that the GACS Defendants' "unlawful commercial timbering and

---

[5] At that time, the Underlying Plaintiffs also moved for a temporary restraining order preventing further development operations on the Subject Property (Dkt. No. 23-1).

4

development constitutes a public nuisance," and in Count Three, that the GACS Defendants have "jointly engaged in a common fraudulent scheme and conspiracy . . . to hide and conceal the true development plans" for the Subject Property. Id. at 7, 8. Finally, in Count Four, the Underlying Plaintiffs seek injunctive relief preventing further development of the property. Id. at 8-9.

At the time of some, if not all, of the GACS Defendants' purported timbering and excavation operations on the Subject Property, they were insured under a commercial general liability policy issued by Nautilus on October 30, 2015, to cover several tracts of real property, including the Subject Property ("the Policy") (Dkt. No. 1-2). The GACS Defendants requested that, pursuant to the Policy, Nautilus defend and indemnify them on the claims alleged in the Underlying Complaint. Id.

**B.  Procedural Background**

Nautilus filed its complaint in this Court on May 19, 2017 (Dkt. No. 1), seeking a declaration that the Policy does not provide coverage to the GACS Defendants for any of the claims asserted against them in the Underlying Complaint, and that it therefore has no duty to defend or indemnify them in connection with the underlying case. The GACS Defendants answered the complaint on June 8, 2017 (Dkt. No. 9).

**NAUTILUS INS. CO. v. GC&P DEV., LLC, ET AL.　　　　　　　　　5:17CV60**

**AMENDED MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 23]**

Following the entry of a briefing schedule, Nautilus moved for summary judgment (Dkt. No. 23), arguing that there is no issue of material fact in dispute regarding whether its policy affords coverage for the underlying claims against the GACS Defendants.[6] In support of its motion, Nautilus primarily argues that timbering and excavation operations, whether negligent or not, do not constitute an "occurrence" so as to trigger coverage under the Policy. Id. at 8-10. It argues in the alternative that the Policy's "Construction Operations" exclusion precludes coverage relating to tree clearing, debris removal, and excavation, and that its "Work Performed by Contractors or Subcontractors" exclusion prohibits coverage where property damage arises out of work performed by a contractor or subcontractor. Id. at 10-15. Further, for the same reasons it argues that the Underlying Complaint fails to allege an occurrence under the Policy, it argues that the "Expected or Intended Injury" exclusion operates to exclude coverage for the underlying claims.

Nautilus makes additional arguments that (1) the Policy does not provide coverage for injunctive relief, (2) the Policy's

---

[6] Nautilus's motion for summary judgment does not address arguments related to Count One, Misrepresentation in the Application, arising from certain misrepresentations purportedly made by the GACS Defendants in an application for an insurance policy (Dkt. No. 1 at 7-10).

"Pollution" exclusion precludes coverage for Ms. Travis's bodily injury claim, and (3) the Policy excludes coverage for punitive damages. Id. at 10, 15-18, 19.

In response, the GACS Defendants first concede that the Policy does not provide coverage for the underlying claims for injunctive relief, conspiracy, punitive damages, or bodily injury to Ms. Travis (Dkt. No. 27 at 2). While conceding the issue of coverage as to those claims, they argue that Nautilus owes them an ongoing duty to defend because the Underlying Plaintiffs' allegations of negligence are covered by the Policy. According to the GACS Defendants, because the Underlying Complaint alleges "negligent" timbering and excavation, and does not allege an "intention" to cause excess water runoff, the allegations related to property damage constitute an occurrence under the Policy. Id. at 6-7. They further contend that neither the Construction Operations exclusion nor the Work Performed by Contractors or Subcontractors exclusion "appl[ies] to the facts alleged in the Underlying Complaint." Id. at 7.

In replying to these arguments, Nautilus asserts that, while characterized as negligence-based claims in the Underlying Complaint, the allegations describe intentional conduct by the GACS Defendants and, therefore, do not constitute an occurrence

7

triggering coverage under the Policy. Nautilus also reiterates its arguments regarding the applicability of the Policy's Construction Operations and Work Performed by Contractors or Subcontractors exclusions to preclude coverage for the underlying claims. Id. at 5-8. The matter is now fully briefed and ripe for disposition.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a), (c)(1)(A). When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party. Providence Square Assocs., L.L.C. v. G.D.F., Inc., 211 F.3d 846, 850 (4th Cir. 2000). The Court must avoid weighing the evidence or determining its truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex Corp. v. Catrett,

477 U.S. 317, 323 (1986). Once the moving party has made the necessary showing, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256 (internal quotation marks and citation omitted). The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact could reasonably find for the nonmoving party. Id. at 248–52.

### III. APPLICABLE LAW

In a declaratory judgment action based on diversity jurisdiction, the Court must apply West Virginia substantive law, as it is the state in which the subject policy was issued. See Beckley Mechanical, Inc. v. Erie Ins. & Cas. Co., 374 Fed. Appx. 381, 383, n. 1 (4th Cir. 2010) (citing Erie R.R. v. Tompkins, 304 U.S. 64 (1938)).

Under West Virginia law, liability insurance policies establish two main duties on the part of the insurer, the duty to defend and the duty to indemnify. See e.g., Aetna Cas. & Sur. Co. v. Pitrolo, 342 S.E.2d 156, 160 (W.Va. 1986); Donnelly v. Transportation Insurance Co., 589 F.2d 761, 765 (4th Cir. 1978). As a general rule, an insurer's duty to defend is triggered when "the allegations in the plaintiff's complaint are reasonably susceptible

9

of an interpretation that the claim may be covered by the terms of the insurance policy." Pitrolo, 342 S.E.2d at 160; see also Syl. Pt. 2, Farmers and Mechanics Mut. Ins. Co. of West Virginia v. Cook, 557 S.E.2d 801, 802 (W.Va. 2001). If any of the claims against the insured might trigger coverage, the insurer must defend against all the claims asserted. See Horace Mann Ins. Co. v. Leeber, 376 S.E.2d 581, 584 (W.Va. 1988) (citing Donnelly, 589 F.2d at 765). Nevertheless, the insurer need not provide a defense if the claims against the insured are "entirely foreign to the risk insured against." Air Force Ass'n v. Phoenix Ins. Co., 1990 WL 12677, at *2 (4th Cir. 1990) (citing Donnelly, 589 F.2d at 765).

The specific wording of an insurance policy determines whether it provides coverage for a particular claim. See Beckley Mechanical, 374 Fed. Appx. at 383; Cherrington v. Erie Ins. Property and Cas. Co., 745 S.E.2d 508, 524 (W. Va. 2013). Indeed, "[l]anguage in an insurance policy should be given its plain, ordinary meaning." Syl. Pt. 8, Cherrington, 745 S.E.2d at 511 (internal quotations and citations omitted). Courts should not endeavor to interpret policy provisions unless they are unclear or ambiguous. Id. Instead, courts must give terms and provisions their meaning in the "plain, ordinary and popular sense, not in a strained or philosophical sense." Polan v. Travelers Ins. Co., 192

S.E.2d 481, 484 (W. Va. 1972); see also Syl. Pt. 9, Cherrington, 745 S.E.2d at 511.

A term is ambiguous if it "'is reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning, ...'" Allstate Ins. Co. v. Ashley, 1994 WL 580090, at *2 (4th Cir. 1994) (quoting Syl. Pt. 1, Surbaugh v. Stonewall Cas. Co., 283 S.E.2d 859, 860 (W. Va. 1981) (quoting in turn Syl. Pt. 1, Prete v. Merchants Property Ins. Co. of Ind., 223 S.E.2d 441 (W. Va. 1976))). Courts should resolve any ambiguity in favor of the insured. See Jenkins v. State Farm Mut. Auto. Ins. Co., 632 S.E.2d 346, 350 (W. Va. 2006) (quoting Leeber, 376 S.E.2d at 584). Moreover, when the ambiguous language is exclusionary in nature, it should be "strictly construed against the insurer in order that the purpose of providing indemnity not be defeated." Jenkins, 632 S.E.2d at 346 (quoting Syl. Pt. 5, National Mut. Ins. Co. v. McMahon & Sons, Inc., 356 S.E.2d 488 (W. Va. 1987)).

### IV. RELEVANT POLICY LANGUAGE

The Policy provides, in relevant part:

**SECTION I - COVERAGES
COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.     Insuring Agreement**

11

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which the insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any suit seeking damages for "bodily injury" or "property damages" to which this insurance does not apply.

. . .

    **b.** The insurance applies to "bodily injury" and "property damage only if

        **1.** The "bodily injury" or "property" damage is caused by an "occurrence" that takes place in the "coverage territory."

**\*\*\***

**SECTION V - DEFINITIONS**

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

. . .

**17.** "Property damage" means:

    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

(Dkt. No. 1-2 at 11; 17)(emphasis in original).

## V. LEGAL ANALYSIS

The threshold question is whether coverage was triggered by an "occurrence" as defined under the Policy. If so, it raises the secondary question of whether the Construction Operations exclusion or the Work Performed by Contractors and Subcontractors exclusion, or both, operate to deny that coverage.

**A. Coverage**

An insurer's duty to defend is normally triggered when "the allegations in the plaintiff's complaint are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy." Pitrolo, 342 S.E.2d at 160. In deciding coverage, the court need not adjudicate the underlying facts; rather, the determination is made based upon the allegations in the complaint. West Virginia Fire & Cas. Co. v. Stanley, 602 S.E.2d 483, 490 (W. Va. 2004) (citing Corder v. William W. Smith Excavating Co., 556 S.E.2d 77, 80 (W. Va. 2001)). In other words,

> an insurer has a duty to defend an action against its insured only if the claim stated in the underlying complaint could, without amendment, impose liability for risks the policy covers. If the causes of action alleged in the plaintiff's complaint are entirely foreign to the risks covered by the insurance policy, then the insurance company is relieved of its duties under the policy.

Id. (citing State Auto Mutual Ins. Co. v. Alpha Engineering Serv. Inc., 542 S.E.2d 876, 879 (W. Va. 2000)). Thus, under Stanley, "the

13

Court's inquiry . . . focuse[s] on the allegations of the underlying complaint, rather than the facts supporting those allegations." State Auto, Property, and Cas. Ins. Co. v. Edgewater Estates, Inc., No. 2:09-0346, 2010 WL 17080253, *3 (S.D.W.Va. 2010).

As noted, the Policy issued to the GACS Defendants provides coverage for certain property damage caused by an "occurrence" (Dkt. No. 1-2 at 11). The determinative issue therefore is whether any of the property damage alleged in the Underlying Complaint resulted from an occurrence, which the Policy defines as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."[7] Id. at 17.

Although the Policy does not define the term "accident," the Supreme Court of Appeals of West Virginia ("Court of Appeals") has noted that "the common and everyday meaning of 'accident' is "a chance event or events arising from unknown causes." Stanley, 602 S.E.2d at 492 (addressing the meaning of "accident" where it is not defined in a policy). Significantly, the Court of Appeals has

---

[7] Given the Supreme Court of Appeals of West Virginia's recognition that "accident" language limiting coverage is the equivalent of an intentional acts exclusion, the Court need not separately analyze the Policy's "Expected or Intended Injury" exclusion. Westfield Ins. Co. v. Davis, 232 F. Supp.3d 918, 926 & n.4 (S.D.W.Va. 2017)(citing Stanley, 602 S.E.2d at 493).

14

repeatedly observed that, in determining whether an occurrence was or was not an accident, courts should ordinarily give "primary consideration, relevance, and weight . . . to the perspective or standpoint of the insured whose coverage under the policy is at issue." State ex rel. Nationwide Mut. Ins. Co. v. Wilson, 778 S.E.2d 677, 683 (W. Va. 2015) (quoting Syl., Columbia Cas. Co. v. Westfield Ins. Co., 617 S.E.2d 797 (W. Va. 2005)(holding that from the perspective of the County Commission that held the policy, the suicides of inmates were "accidents" and thus "occurrences" under the policy). It has elaborated that "an accident is never present when a deliberate act is performed unless some additional unexpected, independent and unforeseen happening occurs which produces the damage." Id. (citations omitted).

Thus, perhaps unsurprisingly, "merely alleging negligence in the complaint to describe intentional actions cannot 'alter the essence of the claim for purposes of determining the availability of insurance coverage.'" Westfield Ins. Co. v. Davis, 232 F. Supp.3d 918, 925 (S.D.W.Va. 2017) (quoting Smith v. Animal Urgent Care, Inc., 542 S.E.2d 827, 832 (W. Va. 2000)); see also Stanley, 602 S.E.2d at 497 (concluding that allegations describing intentional conduct were "excluded from coverage by the definition of 'accident.'"). As the Court of Appeals has explained, for an

event to be considered an accident under West Virginia law, "both the means and the result must be unforeseen, involuntary, unexpected, and unusual." Stanley, 602 S.E.2d at 497 (internal citations omitted); see also Westfield Ins. Co. v. Pinnacle Grp., LLC, 137 F.Supp.3d 912, 918 (S.D.W.Va. 2015)(quoting Stanley); Edgewater, 2010 WL 17080253, *3 (same).

Because both the means and the result must be "unforeseen, involuntary, [and] unexpected" for an event to be considered an accident, the Court is not persuaded by the argument that any property damage resulting from the GACS Defendants' intentional development activities would have been unintended. As the Court of Appeals recently clarified in Am. Modern Home Ins. Co. v. Corra, "an occurrence, in addition to excluding intentional conduct, also excludes conduct that is foreseen and expected." 671 S.E.2d 802, 807 (W. Va. 2008) (finding no occurrence where the injury was allegedly caused by the insured homeowner's conduct in knowingly permitting an underage adult to consume alcohol on the homeowner's property). Moreover, "it is obvious that where [an insured] engages in conduct knowingly, that conduct clearly cannot be said to be unexpected and unforeseen from the perspective of the [insured]." Id. at 806; see also Pinnacle Grp., 137 F.Supp.3d at 919 (finding that the insured's debt collection activities, even if not intended

16

to be illegal, were not "accidents" because the means were intentional acts).

Applying West Virginia's definition of accident to the allegations in the Underlying Complaint, the Court concludes that, from the perspective of the insured GACS Defendants, neither the means nor the result of the events alleged was unforeseen or unexpected. First, even a cursory review of the complaint makes clear that the alleged "means" by which property damage purportedly occurred were the GACS Defendants' intended development activities on the Subject Property (Dkt. No. 1-3 at 6-7). The complaint further alleges that, in conducting these development activities, the GACS Defendants consciously "ignored best and safe practices required by state law, city ordinance, or industry standards," and "continued to do soil excavation work . . . even after the City of Wheeling issued a 'stop work order' to Defendant GC&P." Id. at 5-6. As succinctly stated in Corra, "knowing conduct is certainly foreseen or expected." 671 S.E.2d at 808.

Second, the Underlying Plaintiffs plainly allege "results," that is property damage, foreseen or expected by the GACS Defendants. For example, they allege that Mr. Coyne "offered to buy [the Travises'] house on multiple occasions," and told other individuals in the community that he "was in the process of buying

17

up all the houses below his operation . . . 'so he won't be liable for them'" (Dkt. No. 1-3 at 5). Further, and perhaps most glaringly, the Underlying Complaint alleges that when Ms. Travis expressed concern about the potential impact of the development activities on the stability of the Subject Property, Mr. Coyne responded, "duh, that's why I have insurance." Id. at 4. Thus, while pled under a negligence-based theory of recovery, the Underlying Complaint alleges knowing and intentional conduct with outcomes foreseen or expected by the GACS Defendants.

Because the Underlying Complaint alleges damages caused only by intended activities, the claims against the GACS Defendants do not arise from an occurrence, as required to trigger coverage under the Policy.

**B. Exclusions**

Having determined that there is no coverage under the Policy, it is not necessary to further analyze whether the Construction Operations or Work Performed by Contractors and Subcontractors exclusions would operate to deny coverage.

### VI. CONCLUSION

For the reasons discussed, the Court concludes that the claims alleged in the Underlying Complaint do not constitute an occurrence

**NAUTILUS INS. CO. v. GC&P DEV., LLC, ET AL.**  5:17CV60

**AMENDED MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 23]**

under the Policy and thus no coverage exists for those claims. Accordingly, the Court **GRANTS** Nautilus's motion for summary judgment (Dkt. No. 23), and **DECLARES** that it has no duty to defend or indemnify the GACS Defendants on the claims alleged in the Underlying Complaint filed in the Circuit Court of Ohio County.

Pursuant to Federal Rule of Civil Procedure 54(b), and finding no just reason for a delay of the appeal of this Order, the Court **DIRECTS** entry of a final judgment in favor of Nautilus, **GRANTS** the GACS Defendants' Motion to Stay Third-Party Claims (Dkt. No. 41), and **STAYS** the claims asserted in this case against third-party defendant Glessner Wharton & Andrews Insurance, LLC (Dkt. No. 18), pending resolution of any appeal of this Order.

It is so **ORDERED.**

Pursuant to Rule 54(b), the Court **DIRECTS** the Clerk to enter a separate judgment order. It further **DIRECTS** the Clerk to transmit copies of this Amended Memorandum Opinion and Order and the judgment order to counsel of record.

DATED: August 27, 2018

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE